**SOUTHLAND EXPRESS, INC.,**
Plaintiff–Appellant,

v.

**SCRAP METAL BUYERS OF TAMPA, INC., Defendant–Appellee.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

Sept. 7, 1994.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 3, 1995.

John D. Goldsmith, Trenam, Simmons, Kemker, Scharf, Barkin, Fry & O'Neill, Tampa, FL, Alvin L. Harris of Greene & Greene, Nashville, for appellant.

Paul B. Plant and J. Jay Cheatwood, Harwell, Plant & Cheatwood, Lawrenceburg, for appellee.

CRAWFORD, Judge.

This appeal concerns the trial court's assertion of long-arm jurisdiction over a nonresident corporate defendant.

On February 4, 1992, plaintiff, Southland Express, Inc., filed a complaint against defendant, Scrap Metal Buyers of Tampa, Inc., in the Circuit Court of Lawrence County, Tennessee, seeking recovery of the balance due for shipping charges incurred by defendant between July, 1990, and June, 1991.

The complaint alleges that between July, 1990, and June, 1991, defendant engaged plaintiff to transport over one-hundred ninety (190) loads of goods at a total cost of approximately $119,943.00, leaving a balance due and owing of $36,225.00, which defendant has refused to pay. The complaint also alleges that defendant is not registered to do business in Tennessee, but has engaged in business in Lawrence County.

Service of process was obtained on defendant through the secretary of state as provided in Tennessee's long-arm statute, T.C.A. § 20–2–215 (1980).

Scrap Metal filed a motion to dismiss the cause of action for lack of in personam jurisdiction and filed in support of its motion the affidavits of Willie B. Hamilton and Jon A. Yob. Southland filed the affidavits of Steve Cone and Robert Pulley in opposition to the motion to dismiss. The trial court denied the motion to dismiss, and the case was subsequently set for trial on January 4, 1994. Scrap Metal failed to appear for the trial and based upon the proof introduced, the trial court entered judgment against Scrap Metal for the unpaid freight bills in the amount of $36,225.75, plus pre-judgment interest in the amount of $9,106.56. Scrap Metal has appealed and presents three issues for review.

The first issue for review, as stated in Scrap Metal's brief, is:

1. Whether the trial court erred in failing to dismiss the complaint for lack of in personam jurisdiction over defendant.

Scrap Metal's motion to dismiss was supported by two affidavits, and Southland filed two affidavits in opposition to the motion. Due to the limited nature of the affidavits, our knowledge of the facts is severely restricted.

Scrap Metal relies upon the affidavits of Jon A. Yob and Willie B. Hamilton. Jon A. Yob's affidavit states that he is President of Scrap Metal and was the person who had the principal dealings with Southland. Originally Southland and Charles Bluestone Company had an agreement whereby Southland would pick up goods from Scrap Metal for delivery to various places and Bluestone would be responsible to Southland for the shipping

charges. Bluestone refused to pay for shipping charges at some point, and in the fall of 1990, Willie Hamilton of Southland traveled to Scrap Metal's office in Tampa, Florida to discuss payment arrangements for shipped goods. Yob and Hamilton reached an agreement regarding various terms and conditions for payment and for doing business with Southland; one of the agreements was that any dispute between Southland and Scrap Metal regarding shipments or payment would be resolved by court action or by arbitration in Florida. Essential to Scrap Metal's decision to do business with Southland was the agreement that Scrap Metal would not be required to litigate or resolve disputes out of state. Yob maintained that Scrap Metal is a Florida corporation located in Tampa and has not conducted business within the State of Tennessee.

Willie B. Hamilton's affidavit states that he worked for Southland as a freight broker from October 1, 1989, to December 28, 1990, and his duties involved negotiating terms and conditions of hauling goods for various companies, including Scrap Metal. Originally, Charles Bluestone Company agreed to pay the freight bills, but when Bluestone refused to pay in the fall of 1990, Hamilton met with Jon Yob in Tampa, Florida, to discuss the terms and conditions for hauling goods for Scrap Metal. They also discussed how disputes between Southland and Scrap Metal would be resolved. Yob insisted that if a dispute arose, it must be resolved in Florida because he did not do business in Tennessee and did not want to have to travel to Tennessee to resolve any disputes. On behalf of Southland, Hamilton agreed that any disputes between Southland and Scrap Metal would be resolved in Florida.

In opposition to the motion to dismiss, Southland relied upon the affidavits of Robert Pulley and Steve Cone. Robert Pulley's affidavit states that he is President of Southland and that Willie B. Hamilton was a sales broker during the time he was employed at Southland. Hamilton was never an officer of the company and was never authorized, either implicitly or explicitly, to contract on behalf of Southland with regard to the selection of a forum for resolving disputes. In

1992, Pulley met with Jon Yob of Scrap Metal, and they talked at length about their business relationship, but at no time did Yob mention any alleged agreement concerning the place of suit. He had no knowledge of any such agreement prior to the filing of the affidavits of Hamilton and Yob in this case, and if he had learned of such an agreement, he would have immediately informed Scrap Metal that the agreement was beyond Hamilton's authority.

With regard to the business dealings between Southland and Scrap Metal, Pulley stated that between June, 1990, and June, 1991, Scrap Metal hired Southland to haul over one-hundred ninety (190) loads of goods on Scrap Metal's behalf at a total cost of $119,943.00. Scrap Metal agreed to pay for the hauling services, but still owes the sum of $36,225.75. On each occasion that Scrap Metal hired Southland to haul loads, Scrap Metal gave instructions to Southland concerning what was needed and where and when to pick up and deliver the freight. Scrap Metal called in all orders for hauling to Southland in Lawrence County, Tennessee, for dispatch. There were many discussions between Scrap Metal and Southland concerning the slow payment of the account, and Scrap Metal gave assurances that the account would be brought current.

Steve Cone's affidavit states that he is Vice President of Southland. He reiterated Pulley's information concerning the various orders for pick up and delivery of freight, and stated that prior to the filing of Hamilton's and Yob's affidavits he had no knowledge of any agreement concerning the place to resolve potential controversies between Southland and Scrap Metal. Hamilton was not an officer of Southland and had no authority to enter into such an agreement. Furthermore, no one at Scrap Metal ever mentioned this agreement to Cone.

■ Because defendant is a corporate nonresident of Tennessee, plaintiff filed the suit in Tennessee pursuant to the provisions of T.C.A. § 20–2–214(a)(6) (1980), which provides:

> **20–2–214. Jurisdiction of persons unavailable to personal service in state— Classes of action to which applicable.**

(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

\* \* \* \* \* \*

(6) Any basis not inconsistent with the constitution of this state or of the United States;

The Tennessee long-arm statute confers jurisdiction to the full extent allowable under the due process clause of the Fourteenth Amendment to the Constitution of the United States. *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242 (Tenn.App.1981).

■ In determining whether a court may assert *in personam* jurisdiction over a non-resident defendant, due process requires that the defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *J.I. Case Corp. v. Williams*, 832 S.W.2d 530 (Tenn.1992).

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the United States Supreme Court upheld service of process under the Florida long-arm statute against a nonresident franchisee in a suit arising out of a franchise contract. The Court noted that prior Supreme Court decisions have held that individuals are entitled to fair warning if their activities may subject them to jurisdiction in a foreign forum. 471 U.S. at 472, 105 S.Ct. at 2182. The Court said:

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacio-*

*nales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Thus "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *World–Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. [286] at 297–298, 100 S.Ct. [559] at 567–568 [62 L.Ed.2d 490] [ (1980) ]. Similarly, a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story. *Keeton v. Hustler Magazine, Inc., supra*; see also *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (suit against author and editor). And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia State Corporation Commission*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). See also *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957).

We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.*, at 223, 78 S.Ct., at 201; see also *Keeton v. Hustler Magazine, Inc., supra*, 465 U.S., at 776, 104 S.Ct., at 1479. Moreover, where individuals "purposefully derive benefit" from their interstate activities, *Kulko v. Superior Court of California*, 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978), it may well be unfair to allow them to escape having to account

in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself· in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *McGee v. International Life Insurance Co., supra,* 355 U.S., at 223, 78 S.Ct., at 201.

Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington, supra,* 326 U.S., at 316, 66 S.Ct.; at 158. Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 295, 100 S.Ct., at 566. Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.,* at 297, 100 S.Ct., at 567. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958):

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.,* 465 U.S., at 774, 104 S.Ct., at 1478; *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S., at 299, 100 S.Ct., at 568, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra,* 466 U.S., at 417, 104 S.Ct., at 1873. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection:" with the forum State. *McGee v. International Life Insurance Co., supra,* 355 U.S., at 223, 78 S.Ct., at 201; see also *Kulko v. California Superior Court, supra,* 436 U.S., at 94, n. 7, 98 S.Ct., at 1698, n. 7. Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S., at 781, 104 S.Ct., at 1481, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 472–76, 105 S.Ct. at 2182–84.

Scrap Metal asserts that the quantity, nature and quality of its contacts with Tennessee were minimal at best. Southland argues that Bluestone was responsible for the shipping charges, and upon Bluestone's failure to pay those charges, Southland's representative traveled to Florida to negotiate a deal with Scrap Metal. This may very well be true, but it is difficult to determine the arrangements from the minimal record before us. In any event, however, Scrap Metal's argument ignores the allegations of Southland's complaint and supporting affidavits

that the balance due Southland represents incurred freight charges for various and sundry shipments that originated when Scrap Metal called Southland's office in Tennessee to place individual orders.

Scrap Metal does not dispute that it had repeated contacts with Southland at Southland's Tennessee office to arrange for the various shipments that form the basis for the lawsuit. Scrap Metal's contacts, which are more than minimum, resulted in a continuing relationship between Southland and Scrap Metal. It is clear that Scrap Metal purposefully availed itself of the opportunity to create obligations between itself and Southland and to cause a significant consequence in Tennessee. From the record before us, we find that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice and therefore does not violate the due process clause of the United States Constitution." *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 533 (Tenn.1992).

■ The second issue for review, as stated in Scrap Metal's brief, is:

2. Whether the Trial court erred in failing to enforce the parties' choice of forum by dismissing the complaint, when the plaintiff and defendant agreed that any dispute would be resolved in Florida.

The affidavits of Willie B. Hamilton and Jon Yob that Scrap Metal filed in support of its motion to dismiss set forth an agreement between Willie B. Hamilton on behalf of Southland and Jon Yob on behalf of Scrap Metal that any controversy or dispute between Southland and Scrap Metal would be resolved by arbitration or court action in the State of Florida. The affidavits that Southland submitted in opposition to the motion to dismiss did not controvert the agreement, but state that Hamilton had no authority to make such an agreement, thus placing the question of Hamilton's apparent authority in issue. As previously noted, Scrap Metal elected not to participate in the trial of this matter and obviously presented no proof of any kind. The burden of proving an agency relationship falls on the person alleging its existence, and the scope and extent of an agent's real and apparent authority are questions to be determined by the trier of the fact

from all of the facts and circumstances introduced as evidence. *Sloan v. Hall*, 673 S.W.2d 548 (Tenn.App.1984). There is absolutely no proof in this record to support an allegation that Hamilton had apparent authority to enter into the forum selection agreement. This issue is without merit.

The third issue for review, as stated in Scrap Metal's brief, is:

3. Whether the Trial Court erred in failing to dismiss the case and in entering judgment when Southland's filing of the lawsuit and obtaining service of process occurred while the bankruptcy automatic stay was in place, rendering all actions taken in the case as void *ab initio.*

The record reflects that an involuntary bankruptcy petition was filed against Scrap Metal on March 13, 1991, in the Middle District of Florida, Tampa Division. Southland filed the lawsuit in the instant case in the Circuit Court for Lawrence County, Tennessee, on February 4, 1992 and obtained service of process on Scrap Metal February 24, 1992. The involuntary bankruptcy case was dismissed by order entered March 16, 1992, approximately one and one-half months after the instant case was filed in the trial court.

Scrap Metal asserts on appeal that Southland's institution of the state court action violated the automatic stay imposed pursuant to 11 U.S.C. § 362(a) and that the institution of the action and the service of process on Scrap Metal was void *ab initio.*

11 U.S.C.A. § 362(a)(1) (1993) provides in pertinent part:

[A] petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

The parties have not cited, nor has our research revealed, any Tennessee authority

dealing with a case filed in violation of an automatic bankruptcy stay. However, a review of cases decided in the federal system reveals that there is division among the U.S. Circuit Courts on the issue of whether actions filed in violation of the automatic stay are void or voidable. It appears that a majority of these courts have held that actions taken in violation of the automatic stay are void. *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125 (3rd Cir.1992); *In re Schwartz,* 954 F.2d 569 (9th Cir.1992); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2nd Cir.1987) *cert. denied* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982). However, the Fifth Circuit in *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989), and the Sixth Circuit in *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993), have both held that violations of the automatic stay are voidable.

In *Easley,* noting the definitions of "void" and "voidable," the Court of Appeals for the Sixth Circuit said:

> "Void" is defined as "an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it," *Black's Law Dictionary* 1573 (6th ed. 1990); and as that "of no legal force or effect and so incapable of confirmation or ratification." *Webster's Third New International Dictionary* 2562 (1971). "Voidable" is defined as "not void in itself," *Black's Law Dictionary* 1574 (6th ed. 1990), and as "capable of being adjudged void, invalid, and of no force," *Webster's Third New International Dictionary* 2562 (1971). We think that "invalid" is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word "void," "invalid" describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified.

990 F.2d at 909.

The *Easley* court reasoned that since the bankruptcy court has jurisdiction to modify or annul the stay, 11 U.S.C.A. § 362(d), an action in violation of stay must be voidable. The Court said:

> Bankruptcy courts have the jurisdiction to modify the automatic stay so as to allow actions against the debtor. 11 U.S.C.A. 362(d). This section expressly permits the bankruptcy court to annul the stay. This power to annul "permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." 2 Collier on Bankruptcy 362.07 (footnotes omitted). If we are to give effect to the statutory authority to annul a stay, such actions can only be described as invalid and voidable, since void actions are incapable of later cure or validation.

990 F.2d at 909, 910.

We believe the better reasoned approach is that stated by the Sixth Circuit; therefore, we hold that an action filed in violation of the automatic bankruptcy stay is voidable and not void.

In the instant case, Scrap Metal argued in its motions to dismiss that Southland's actions should be dismissed or abated pending the outcome of the Florida bankruptcy court's ruling on Scrap Metal's motion for "costs, attorney fees, compensatory and punitive damages and Rule 9011 sanctions." Scrap Metal asserted that the bankruptcy court "can determine whether or not Southland is entitled to a set-off for any amounts Southland claims it is owed by Scrap Metal."

Scrap Metal did not assert or argue in the trial court that the action was void because it violated the automatic stay imposed by 11 U.S.C. § 362(a) and raises that issue for the first time on appeal. A party is not entitled to relief on an issue that is raised for the first time on appeal. *Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn.1983), *Seay v. County of Shelby,* 672 S.W.2d 404, 409 (Tenn.App. 1984). Moreover, Scrap Metal's motion to dismiss specifically states that on January 29, 1992, the bankruptcy judge "dismissed the involuntary bankruptcy petition at the close of Southland's and the other petitioning creditor's case. The court entered its written order on March 16, 1992,. . . ."

If Scrap Metal had raised the issue as to the voidability of this action in the trial court, Southland could have taken action in the bankruptcy court to obtain relief from the stay, and the bankruptcy judge probably would have granted such relief because he had already announced that the petition would be dismissed. It would be inequitable to allow the stay to bar Southland's cause of action under the circumstances of this case. This issue is without merit.

Accordingly, the judgment of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

Appellee has moved for award of expenses for frivolous appeal. We do not view this as a frivolous appeal and the motion is denied.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.