IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 16, 2000 Session

## PURCHASED PARTS GROUP, INC. v. ROYAL APPLIANCE MANUFACTURING COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. 301186 T.D.; The Honorable John R. McCarroll, Jr., Judge**

---

**No. W1999-01550-COA-R3-CV - Filed October 11, 2000**

---

This appeal involves a dispute over jurisdiction. The court below dismissed the case for lack of personal jurisdiction over the defendant, Royal Manufacturing Corporation. Appellant Purchased Parts Group, Inc. appeals from the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

S. Russell Headrick, Joseph M. Koury, Memphis, for Appellant

Frank L. Watson, III, Memphis; Eric L. Zalud, Cleveland, OH, for Appellee

## OPINION

### Facts and Procedural History

Appellant Purchased Parts Group, Inc., ("PPG"), is a Michigan corporation that has an operational and administrative location in Shelby County, Tennessee. Appellee Royal Appliance Manufacturing Company ("Royal") is an Ohio corporation with its principal place of business in Ohio. Royal manufactures the popular "Dirt Devil" line of vacuum cleaners.

In November 1997, PPG and Royal entered into an agreement whereby Royal agreed to pay PPG to provide inventory management services. The agreement was signed by Royal in Cleveland, Ohio. All services provided by PPG under the agreement took place in the Cleveland, Ohio, area. According to the terms of the agreement, either party could terminate for non-performance upon thirty days written notice. Similarly, either party could terminate without cause upon one hundred twenty days written notice.

By a letter dated January 27, 1999, Royal terminated its agreement with PPG. Royal stated that it was terminating the agreement because of PPG's non-performance. As a result of Royal terminating the agreement, PPG ceased performance under the agreement on March 5, 1999. PPG claimed that Royal owed it $40,000 for services rendered under the contract.

PPG filed suit in Shelby County Circuit Court against Royal on March 5, 1999. Royal moved to dismiss for lack of *in personam* jurisdiction on April 13, 1999. On November 19, 1999, the Honorable John R. McCarroll, Jr., granted Royal's motion to dismiss for lack of *in personam* jurisdiction. The trial judge held that since the underlying action did not arise out of Royal's Tennessee "contacts," the exercise of general *in personam* jurisdiction was inappropriate. This appeal followed.

The sole issue raised on appeal is whether the trial court erred in granting Royal's motion to dismiss for lack of personal jurisdiction.

**Standard of Review**

Because this case was tried without a jury and was dismissed based solely on the legal determination that no in personam jurisdiction over the defendant existed, we review the case *de novo* upon the record with no presumption of correctness. See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen, and Ginsburg, P.A., 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

**Discussion of Law**

The United States Supreme Court has established standards for determining whether the exercise of personal jurisdiction over a nonresident defendant is allowable under the Due Process Clause of the Fourteenth Amendment. In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Court stated that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316 (quoting Milliken v. Meyer, 311 U.S. 457 (1940)). The Court stated that the focus of the "minimum contacts" inquiry should be the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe, 326 U.S. at 319.

In addition to asking whether the nonresident defendant has "minimum contacts" with the forum state, a court must also consider those contacts in light of other factors and determine if the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Id. at 316. Such factors include 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. See World-

Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Thus, even if the "minimum contacts" inquiry is satisfied in a particular case, the assertion of personal jurisdiction may be unreasonable after application of these five factors. See Asahi Metal Industry Co., v. Superior Court, 480 U.S. 102 (1987).

The exercise of personal jurisdiction by a Tennessee court over a nonresident defendant such as Royal is governed by section 20-2-214 of the Tennessee Code Annotated, which provides in pertinent part as follows:

> Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
> (2) Any tortious act or omission within this state;
> (3) The ownership or possession of any interest in property located within this state;
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> (6) Any basis not inconsistent with the constitution of this state or of the United States. . . .

Tenn. Code Ann. § 20-2-214 (1999). This statute was intended to reach to the full extent allowable under the Due Process Clause of the Fourteenth Amendment and thus should be given a liberal construction. See J.I. Case Corp. v. Williams, 832 S.W.2d 530, 531 (Tenn. 1992); Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985); Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc., 895 S.W.2d 335, 338 (Tenn. Ct. App. 1994).

**Analysis**

We now consider whether, under the unique facts of the instant case, the trial court should have asserted jurisdiction over Royal pursuant to section 20-2-214 of the Tennessee Code Annotated. Royal's contacts with the state of Tennessee are as follows: (1) Royal has an internet website which can be accessed by anyone, including Tennesseans, to receive information or to purchase Royal's products; (2) Royal sells its products to Tennessee consumers through the use of "1-800" telephone numbers; (3) Royal has marketed its products to Tennessee consumers through the use of extended advertisement television programs known as "infomercials" which employ toll-free telephone numbers; (4) Royal sells its products to Tennesseans through local retailers; (5) Royal employs a business in Lebanon, Tennessee, to perform order fulfillment duties, and another business

in Johnson City, Tennessee, to perform telemarketing services to Tennessee consumers. Under subsection (a)(6) of section 20-2-214 of the Tennessee Code Annotated, a Tennessee court may assert personal jurisdiction over a nonresident defendant with respect to any action or claim for relief arising from "any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6) (1999). This provision requires us to consider whether there are "minimum contacts" between Royal and the state of Tennessee such that the maintenance of an action against Royal in a Tennessee court does not offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316.

While Royal has some contacts with the state of Tennessee, these contacts are limited. For example, Royal is not qualified to do business in Tennessee, nor does Royal maintain an office in Tennessee. Royal has never owned, leased, or possessed any real property in Tennessee. Royal has no employees in Tennessee. Royal does not own or maintain any vehicles in Tennessee. Additionally, Royal does not maintain a local telephone listing, mailing address, or bank account in Tennessee. Moreover, the contract that is the subject of this lawsuit was signed by Royal in Cleveland, Ohio, and all services provided by PPG under the agreement took place in the Cleveland, Ohio, area.

The trial court below based its opinion on J.I. Case Corp. v. Williams, 832 S.W.2d 530 (Tenn. 1992). The trial court interpreted J.I. Case to mean that in order to have general jurisdiction over a defendant, the defendant's contacts with the foreign state must relate to the claim sued upon. We believe it is appropriate at this juncture to clarify the distinction between general and specific in personam jurisdiction. General jurisdiction occurs when a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. See Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984). In contrast, specific jurisdiction occurs when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. See id. at 414.

In the court below, the trial judge quoted a paragraph from J.I. Case, in which the Tennessee Supreme Court was quoting International Shoe. Specifically, the trial judge stated, "For a county [sic] to exercise general in personam jurisdiction over a nonresident defendant without violating the requirements of the Due Process Clause, the proof must show that the defendant maintains 'continuous and systematic' contacts with the foreign state, and those contacts 'give rise to the liabilities sued upon.' J.I. Case, 832 S.W.2d 530, 532 (1992) (quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 317 (1945)). We do not interpret the United States Supreme Court's decisions on jurisdiction to hold that general jurisdiction requires that the contacts must "give rise to the liabilities sued upon." It is important to note that the United States Supreme Court did not specifically adopt the general/specific jurisdiction distinction until its decision in Helicopteros. In Helicopteros, the Court stated, "*[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State*, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." Helicopteros, 466 U.S. 408, 414 (1984) (emphasis added). Thus, the United States Supreme Court has made it clear that a state can exercise general

jurisdiction over a nonresident defendant even if the contacts do not "give rise to the liabilities sued upon."

With this clarification, we must examine Royal's contacts to determine if they are sufficient to allow Tennessee to exercise jurisdiction. It is clear that there is no specific jurisdiction over Royal, as the claim by PPG does not arise out of any of Royal's "contacts" with Tennessee. Thus, we must determine whether Tennessee may exercise general *in personam* jurisdiction over Royal.

The United States Supreme Court has specifically dealt with general jurisdiction in two cases. In Perkins v. Benguet Mining Co., 342 U.S. 437 (1952), the defendant was a Philippine corporation conducting operations "in exile" in Ohio during the Japanese occupation of the Philippines. Benguet's activities in Ohio were extensive. For example, the president and chief stockholder lived in Ohio; the president kept corporate funds in Ohio banks, drew and distributed salary checks there, and generally conducted corporate business in Ohio. Plaintiff's cause of action, however, bore no relation to defendant's Ohio contacts. Rather, plaintiff's claim arose out of defendant's mining operation in the Philippines. Despite the absence of a relationship between the cause of action and the forum, the Court upheld Ohio's jurisdiction, relying on the defendant's very substantial contacts with Ohio.

In contrast, in Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408 (1984), the defendant was a Columbian corporation. A helicopter owned by the Helicopteros corporation crashed in Peru, resulting in the death of four United States citizens. Helicopteros' contacts with Texas consisted of the following: 1) One trip to Texas by Helicopteros' chief executive officer for the purpose of negotiating a transportation services contract; 2) acceptance of checks by Helicopteros that were drawn on Texas banks; and 3) purchases of helicopters and equipment from a Texas manufacturer as well as related training trips. The United States Supreme Court held that Helicopteros' contacts with the state of Texas were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. See Helicopteros, 466 U.S. 408 (1984).

We have carefully analyzed Royal's contacts with the state of Tennessee. Accordingly, we feel that this case is more analogous to Helicopteros than it is to Perkins. In Perkins, the defendant corporation was conducting extensive business activities in the state of Ohio. As noted above, the president and chief stockholder lived in Ohio. He kept corporate funds in Ohio banks, and drew and distributed salary checks there. In contrast, in Helicopteros, the defendant did not conduct corporate business in Texas, and the corporation only had a few "contacts" with the state of Texas.

Royal's contacts with Tennessee are much more analogous to the Helicopteros case. While Royal does sell its products in Tennessee, Royal does not have the extensive contacts that the United States Supreme Court required in Perkins before general jurisdiction could exist. Thus, Royal has not subjected itself to being haled into a Tennessee court on a claim wholly unrelated to its Tennessee contacts. We simply do not find that Royal's contacts are so continuous and systematic that it could anticipate being haled into a Tennessee court for any claim wholly unrelated to its minimal Tennessee contacts. If Royal were required to defend this suit in a Tennessee court, we feel

that the maintenance of the suit would certainly offend traditional notions of fair play and substantial justice. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Additionally, we must consider the "fairness factors" that have been handed down by the United States Supreme Court. These factors include: 1) the burden on the defendant; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the several states' shared interest in furthering fundamental substantive social policies. See World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 292 (1980).

With respect to the first factor listed above, we find that the burden on the defendant would be great. Royal could not have expected to be haled into a Tennessee court to litigate a contract that was totally performed in Ohio and wholly unrelated to its sales in Tennessee. As for the second factor, we fail to find that Tennessee has a great interest in litigating a dispute between a Michigan corporation and an Ohio corporation over a contract that was performed in Ohio. With regard to the third factor, while the plaintiff does have an operational and administrative location in Tennessee and thus has an interest in obtaining convenient and effective relief, we believe that it would not be unduly burdensome for the plaintiff to seek relief in an Ohio court. As for the fourth and fifth factors, we believe that the most appropriate forum to litigate this dispute would be in Ohio. As stated above, the agreement between Royal and PPG was signed in Ohio and performance was to be solely in Ohio. As a result, it logically follows that since the performance of the agreement in question took place solely in Ohio, Ohio would be the most efficient forum in which to resolve this controversy. Due to all the factors discussed above, we conclude that Royal does not have the "minimum contacts" necessary for a Tennessee court to exercise general jurisdiction over it.

Although we reach the same result as the trial court, but for a different reason, this does not present a problem. Where a trial judge has reached the correct result, it will not be reversed because he may have predicated it on an erroneous reason. Pearson v. Garrett Financial Services, Inc., 849 S.W.2d 776, 780 (Tenn. Ct. App. 1992). The judgment may simply be affirmed on the proper basis. See Allen v. National Bank of Newport, 839 S.W. 2d 763, 765 (Tenn. Ct. App. 1992).

**Conclusion**

Accordingly, for the aforementioned reasons, we hereby affirm the trial court. Costs on appeal are taxed to the Appellant, Purchased Parts Group, Inc., and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE