IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## STEVEN C. MOHN, ET UX. v. BERNARD GRAFF, ET AL.

**Direct Appeal from the Chancery Court for Hamblen County**
**No. 97-233     Thomas R. Frierson, II, Chancellor**

---

**No. E1999-01015-COA-R3-CV - Decided May 31, 2000**

---

The plaintiffs, Steven C. Mohn and wife, Roberta A. Mohn ("the buyers"), purchased a parcel of real property, the vast majority of which is a less-than-an-acre lot -- Lot 91 -- in Beacon Hills Subdivision, Hamblen County. They brought this action against the Beacon Hills Homeowners' Association, Inc. ("the Association"), seeking a declaration of the parties' rights with respect to a restrictive covenant affecting their property. The restrictive covenant had been amended so as to allow Mark S. Hammer and wife, Maria H. Hammer[1] ("the sellers") to subdivide their property and sell a portion of it to the buyers. The trial court found that the amendment permitting the subdivision was valid and awarded the buyers damages. The Association appeals, arguing (1) that the trial court erred in awarding damages against it when the buyers did not sue the Association for damages and (2) that the trial court erred in finding that the president of the Association had apparent authority to execute the amendment to the restrictive covenant. We reverse the award of damages. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which GODDARD, P.J., and FRANKS, J., joined.

J. Randall Shelton, Morristown, Tennessee, for the appellant, Beacon Hills Homeowners' Association, Inc.

Clinton R. Anderson, Morristown, Tennessee, for the appellees, Steven C. Mohn and Roberta A. Mohn.

**OPINION**

---

[1]The Hammers were third-party defendants in this lawsuit; however, the Association's action against them was dismissed and is not a subject of this appeal.

Prior to the sellers' ownership and subsequent conveyance to the buyers, the bulk of the property at issue in this case was known as Lot 91 of the Beacon Hills Subdivision. It was owned by Garland Cureton, who also owned approximately 23 acres outside the subdivision and immediately adjacent to it. Barbara Drive, a road intersecting the subdivision, terminated in a cul-de-sac that bordered Lot 91 and a portion of the adjacent 23 acres. In 1994, Cureton sought approval from the county planning commission to divide his 23 acres into three approximately equal tracts: Tract 1, which was improved with a residence; Tract 2; and Tract 3. The Association opposed the division. Eventually, Cureton and the Association reached an agreement ("the Cureton Agreement"), in which the Association consented to the division and Cureton agreed to certain conditions. Specifically, Cureton and the Association agreed (1) that the cul-de-sac would be extended to provide access to Tract 2 of the 23 acres; (2) that Barbara Drive would not be subject to further extensions; and (3) that all three of Cureton's tracts would be subject to certain restrictions, including the following:

> Only one house may be placed on each tract of land above set out and these tracts may not be hereafter subdivided.

> *       *       *

> The tracts of the Garland Cureton Property are to contain only one single-family dwellings [sic] and these tracts are not to be subdivided any further.

The Cureton Agreement was duly recorded, and Cureton proceeded to divide his property. A recorded plat referenced in the Cureton Agreement indicates that the newly formed Tract 1 consists of approximately 7.9 acres *and includes Lot 91 of the Beacon Hills Subdivision.* In other words, the plat indicates that Lot 91 was merged into and became a part of Tract 1.

Cureton died and his property was devised to Burrel Kent Brown. In October, 1996, Brown conveyed Tract 1 of the Cureton property, including Lot 91, to the sellers. In November, 1996, the sellers entered into a contract to sell Lot 91 to the buyers for $16,000. The parties learned that in order to receive approval from the county planning commission for the subdivision of Lot 91 from the rest of Tract 1, additional land had to be included with Lot 91 to form a larger tract. The parties agreed to include more land in the sale.

After the contract was executed, Margaret Goforth, the realtor handling the transaction for the sellers, contacted Stuart Stallings, then president of the Association, and advised him that the sellers wished to subdivide their property and sell a portion -- Lot 91 and the small additional sliver of land -- to the buyers. Goforth presented Stallings with a document entitled "Amendment to Agreement and Restrictions" ("the Amendment"), which states, in pertinent part, as follows:

> The Agreement and Restrictions of record in Warranty Book 414, Page 353, in the Register's Office of Hamblen County, Tennessee is hereby amended to provide that Tract No. 1 of the Garland Cureton

> Property...may be sub-divided so that [Lot 91]...may be sub-divided
> from and sold separately from said Tract No. 1.

Stallings signed the Amendment. At the closing, Goforth gave the buyers a copy of the Amendment and advised them that it had been obtained so that the sellers' property could be subdivided. The parties proceeded with closing.

In June, 1997, the new president of the Association, Bernard Graff, sent a letter to the buyers, advising them that the Amendment permitting the subdivision of the sellers' property was invalid because the Association's board of directors had not given Stallings authorization to sign the Amendment. The letter further advises that Graff was considering legal action to invalidate the buyers' deed. Upon receipt of this letter, the buyers, who had planned to build a residence on the property, instead commenced this action.

## I.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P.; **Union Carbide Corp. v. Huddleston,** 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

## II.

The first issue on appeal is whether the trial court erred in awarding damages to the buyers when they did not seek monetary damages from the Association.

The buyers initiated this action against both the Association and its president, Bernard Graff. The buyers sought the following relief from the defendants: (1) a declaration of the parties' rights under the Cureton agreement and the Amendment; (2) a declaration that the buyers' deed is valid and that they are entitled to build a residence on the property; (3) $50,000 in damages *against Graff* for slander of title; (4) an injunction prohibiting Graff and the Association from slandering the title of the buyers' property; and (5) general relief.

The trial court dismissed the slander of title action against Graff; however, it found that Graff's letter constituted a challenge *by the Association* to the buyers' right of possession, enjoyment, and use of their property. Treating the buyers' action against the Association as an action to quiet title, the court awarded the buyers damages of $5,618.15, for the interest payments and refinancing charges incurred by the buyers as a result of the Association's challenge to their title.

The trial court relied on **Montgomery v. Tapp,** 321 S.W.2d 565 (Tenn. 1959), and **Price & Price Mechanical, Inc. v. Hale,** C/A No. 03A01-9612-CH-00402, 1997 WL 367453 (Tenn. Ct. App. E.S., filed July 2, 1997), in finding that the buyers should be awarded damages even though they did not request such relief. We find that the trial court misconstrued the holdings of these decisions.

In *Montgomery,* the plaintiff brought an action in chancery court to remove illegal restrictions placed upon his property. The plaintiff prayed in the alternative for damages in the event that the restrictions could not be removed. 321 S.W.2d at 567. The Supreme Court held that once the chancery court had acquired jurisdiction upon a recognized ground of equity, it then had jurisdiction to award unliquidated damages. *Id.* We do not find that the *Montgomery* decision justifies an award of damages when none are pled.

In *Price & Price Mechanical, Inc. v. Hale,* the other case relied upon by the trial court, we affirmed an award of damages to the plaintiff, although the damages had been pled "with little specificity." 1997 WL 367453, at *2. We further noted "[n]othing requires a plaintiff to plead all damages with more exactness and specificity than that required by the Tennessee Rules of Civil Procedure." *Id.* (quoting *Evans v. Nashville Banner Publishing Co.,* C/A No. 87-164-II, 1988 WL 105718, at *2 (Tenn. Ct. App. M.S., filed October 12, 1988)). Having found that the plaintiff's complaint gave the defendants "sufficient notice of the type of damages claimed to be suffered," we found that the complaint was proper. *Id.*

Unlike the plaintiff in *Price,* who failed to plead damages with much specificity, the buyers in the instant case did not plead damages with *any* specificity: in fact, they did not seek damages against the Association at all. The buyers' complaint did not include a demand for damages with the "exactness and specificity...required by the Tennessee Rules of Civil Procedure."[2] *See Price & Price Mechanical, Inc.,* 1997 WL 367453 at *2. Consequently, the Association had no notice that the buyers sought damages from them. *See id.*

Buyers cite *Lebovitz v. Porter,* 252 S.W.2d 147 (Tenn. Ct. App. 1952) and *Allum v. Stockbridge,* 67 Tenn. 356 (1875), in support of their argument that damages may be awarded under a prayer for general relief. We do not find these cases to be pertinent to our decision, however, because both *Lebovitz* and *Allum* were decided prior to the enactment of the Rules of Civil Procedure.

In sum, because Buyers' complaint did not include a request for damages in accordance with Tenn. R. Civ. P. 8.01, we find that it was error for the trial court to award such damages against the

---

[2]Rule 8.01, Tenn. R. Civ. P., provides as follows:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) *a demand for judgment for the relief the pleader seeks.* Relief in the alternative or of several different types may be demanded.

(Emphasis added).

Association.[3]  In so holding, we are not unmindful of the decision in ***Mitchell v. Mitchell***, 876 S.W.2d 830 (Tenn. 1994), in which the Supreme Court upheld an award of prejudgment interest on the balance owed by the plaintiff's former husband under the parties' property settlement agreement under a prayer for general relief.  The Court reasoned that prejudgment interest need not be specially pled where "the amount of the obligation is certain, or can be ascertained by a proper accounting, and the obligation is not disputed on reasonable grounds." ***Id***. at 832.  We do not find the reasoning of ***Mitchell*** to be applicable in the instant case.

III.

Next, the Association argues that the trial court erred in determining that Stallings had apparent authority to execute the Amendment on behalf of the Association.

The scope and extent of an agent's authority are questions of fact that must be determined from all of the facts and circumstances of the particular case.  ***Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc.,*** 895 S.W.2d 335, 340 (Tenn. Ct. App. 1994).  The burden of proving that an agency relationship exists rests on the party asserting it.  ***Sloan v. Hall,*** 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984).

We find that the Amendment was validly executed because the evidence preponderates that Stallings had *actual* authority to sign the document.  The bylaws of the Association provide, in pertinent part, as follows:

> The President shall preside at all meetings of the Board of Directors and shall see that their orders and resolutions are carried out. *He shall sign all notes, checks, leases, mortgages, deeds, and all other written instruments.*

(Emphasis added).  We find that the bylaws conferred[4] upon Stallings the authority to sign documents on behalf of the Association.  *See* ***Pearson v. Garrett Financial Services, Inc.,*** 849 S.W.2d 776, 780 (Tenn. Ct. App. 1992).  There is nothing in the bylaws conditioning the president's authority to "sign all notes, checks, leases, mortgages, deeds, and all other written instruments" on the prior action of any individual or group of individuals.  We also note that it was a prior president of the Association who executed the Cureton Agreement, the one amended by the document under discussion.

---

[3]We do not find, nor do the parties contend, that the issue of damages against the Association was tried by express or implied consent at trial.  *See* Tenn. R. Civ. P. 15.02.

[4]After this controversy developed, the bylaws were amended to provide that "[n]o officer is to sign ANY legal liability paper which would make the Association liable without first having the written approval of the board of directors to do so."

Because we find that Stallings had the authority to execute the Amendment, we therefore affirm the portion of the trial court's judgment that is based upon the court's determination that the Amendment is valid. We can affirm a judgment if the result is correct even though we disagree with the trial court's reasoning. ***Murvin v. Cofer,*** 968 S.W.2d 304, 311 (Tenn. Ct. App. 1997).

IV.

The judgment of the trial court awarding the buyers damages is reversed. In all other respects, the judgment is affirmed. Costs on appeal are taxed equally to the appellant and appellees. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below, all pursuant to applicable law.