**In re Stephen Wyn DUPUY, Debtor.**

No. 03–36838.

United States Bankruptcy Court,
E.D. Tennessee.

March 29, 2004.

Order Amended March 30, 2004.

---

Thomas H. Barrett, II, Esq., Barrett Legal Group, LLC, Newark, OH, for Unizan Bank, National Association.

Stephen Wyn Dupuy, LaFollette, TN, pro se.

Gwendolyn M. Kerney, Esq., Knoxville, TN, Chapter 13 Trustee.

### MEMORANDUM ON MOTION OF UNIZAN BANK, NATIONAL ASSOCIATION FOR ANNULMENT OF AUTOMATIC STAY

RICHARD S. STAIR, JR., Bankruptcy Judge.

The contested matter before the court is the Motion of Creditor Unizan Bank, Na-

tional Association for Annulment of Automatic Stay of Section 362 (Motion to Annul), filed on January 5, 2004, by Unizan Bank, National Association (Unizan Bank), a secured creditor, requesting annulment of the automatic stay in order to validate a foreclosure sale that occurred on December 17, 2003, two minutes after the Debtor commenced his present bankruptcy case.

A hearing on the Motion to Annul was held on March 25, 2004, at which the Debtor did not appear. The record before the court consists of thirty exhibits. Additionally, the court takes judicial notice of the Debtor's prior bankruptcy cases and of the undisputed facts associated with each case. *See* FED. R. EVID. 201.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(G) (West 1993).

# I

Unizan Bank, as successor in interest to Milton Federal Savings Bank (Milton Federal), is the holder of a promissory note dated March 6, 1995, in the amount of $54,300.00, executed by the Debtor and secured by a mortgage on real property owned by the Debtor located at 2804 State Route 48, Ludlow Falls, Miami County, Ohio (Real Property).

The Debtor failed to pay real estate taxes on the Real Property, and on April 13, 1999, Lydia Callison, the Treasurer of Miami County, Ohio, filed a Complaint for Foreclosure of Delinquent Real Estate Taxes against the Debtor and Milton Federal, among others, in the Court of Common Pleas of Miami County, Ohio (Court of Common Pleas). Ex. 1. The Complaint sought to foreclose upon the Real Property to satisfy the unpaid property taxes in the amount of $2,754.16. Ex. 1. In response, Milton Federal filed an Answer on May 10, 1999, incorporating therein a Counter-Claim against Ms. Callison, requesting an interest in any proceeds from a foreclosure

sale equal to the amount of its mortgage balance, along with a Cross–Claim against the Debtor, requesting a judgment in the amount of $46,816.13 plus interest. Ex. 2. On August 16, 1999, a Default Judgment Entry and Decree of Foreclosure was issued, ordering a sale of the Real Property. Ex. 3. In accordance therewith, a sale of the Real Property was scheduled for October 6, 1999, at 10:00 a.m. Ex. 4.

On October 5, 1999, the Debtor filed a pro se Voluntary Petition under Chapter 13 in this court assigned case number 99–34073 (First Case). By virtue of the bankruptcy filing, the automatic stay went into effect, and the October 6, 1999 foreclosure sale was cancelled. The First Case was voluntarily dismissed by the Debtor on November 8, 1999. On November 19, 1999, the Debtor filed a Voluntary Petition in this court commencing his second pro se bankruptcy case under Chapter 13, Case No. 99–34753 (Second Case). The Second Case was dismissed on the motion of the Chapter 13 Trustee by entry of an Order of Dismissal on October 11, 2000.

In the meantime, in July 2000, Milton Federal merged with Bank First National (Bank First). In March 2001, the foreclosure action against the Debtor was reactivated, and pursuant thereto, on July 30, 2001, Bank First filed a Motion for Summary Judgment with the Court of Common Pleas, seeking judgment against the Debtor in the amount of $54,527.45 plus interest and attorney's fees and requesting foreclosure of the Real Property. Ex. 5. The Debtor filed an Answer on August 6, 2001, disputing the amounts claimed and stating that he was awaiting information regarding the amounts paid to the Chapter 13 Trustee during the Second Case. Ex. 6. The Answer also requested additional time to respond to the Motion for Summary Judgment, and "as a measure of good faith," the Debtor attached an affidavit and

a letter allegedly to his attorney requesting information. Ex. 6.

Despite this assertion of "good faith," on August 9, 2001, the Debtor filed his third pro se bankruptcy case in this court under Chapter 13 (Third Case). The Third Case was assigned Case No. 01–33871, and it once again stayed the foreclosure proceeding in Ohio. The Third Case was dismissed on January 24, 2002, upon the Chapter 13 Trustee's motion. Thereafter, on February 1, 2002, at the request of Bank First, the Court of Common Pleas entered a Judgment Entry Reactivating Action After Termination of Bankruptcy Stay, which set February 15, 2002, as the deadline for filing a response to Bank First's Motion for Summary Judgment filed in July 2001. Ex. 7. On February 15, 2002, the Debtor filed a Response in which he requested additional time, stating that he did not currently have a copy of the Motion for Summary Judgment, and because he was busy with Air National Guard duties, he had not had an opportunity to obtain another copy in order to file a response. Ex. 8.

Notwithstanding his request for additional time, on February 22, 2002, the Debtor filed the fourth of his Chapter 13 bankruptcy cases in this court (Fourth Case). The Fourth Case, which was assigned Case No. 02–30937, was dismissed on June 20, 2002, and the Debtor was barred for 180 days from refiling a petition under any chapter of the Bankruptcy Code.

In March 2002, Bank First merged with Unizan Bank, and in response to Unizan Bank's request, the Court of Common Pleas entered a Judgment Entry Reactivating Action After Termination of Bankruptcy Stay on July 17, 2002. Ex. 9. The Debtor was given until August 5, 2002, to file a response, but no response was filed. Accordingly, on September 10, 2002, a Summary Judgment Entry and Foreclosure Decree was entered by the Court of Common Pleas, awarding a judgment against the Debtor in the amount of $54,527.45 plus interest and authorizing a foreclosure sale of the Real Property, and a foreclosure sale was then scheduled for November 6, 2002. Ex. 10; Ex. 11. However, the November 6, 2002 foreclosure sale was cancelled after the Debtor filed a Notice of Appeal (Appeal) to the Court of Appeals for Miami County, Ohio (Court of Appeals) concerning the Summary Judgment Entry and Foreclosure Decree on October 9, 2002. Ex. 12. The Debtor then filed a Notice of Filing of Bankruptcy on January 3, 2003 (Bankruptcy Notice), stating that he had filed a Chapter 13 bankruptcy case in the Bankruptcy Court for the Eastern District of Tennessee "on or before the 3rd day of January, 2003." Ex. 13. This information was false, as the Debtor did not have a bankruptcy case pending in this court on that date; however, based on the Debtor's Bankruptcy Notice, on February 5, 2003, the Court of Appeals placed the Appeal on "a bankruptcy stay." Ex. 14.

The Appeal was removed from this status on March 12, 2003, pursuant to a Decision and Entry of the Court of Appeals, in which it was stated that the Debtor filed the Bankruptcy Notice based upon his intention to file, which he was then unable to do. Ex. 15. Within this finding, the Ohio Court of Appeals also acknowledged that the Debtor had represented an intention to file for Chapter 7 and to dismiss the Appeal. Ex. 15. These events did not occur, and on June 16, 2003, an Opinion and a Final Entry were filed in the Court of Appeals, overruling the Debtor's Appeal and affirming the October 9, 2002 Summary Judgment. Ex. 16; Ex. 17.

Once again, on July 8, 2003, the Court of Common Pleas entered an Order Reacti-

vating Action After Termination of Appeal, and a foreclosure sale was scheduled for September 10, 2003. Ex. 18; Ex. 19. The foreclosure sale did not occur, however, because on September 9, 2003, the Debtor filed a fifth pro se Chapter 13 bankruptcy case (Fifth Case). The Fifth Case was filed in the Bankruptcy Court for the Southern District of Ohio and was assigned Case No. 03–37865. Ex. 20. The Debtor filed a Motion to Dismiss the Fifth Case on September 24, 2003, and on September 30, 2003, the court entered an Order Dismissing Case with 180–Day Bar to Refiling for failure to abide by orders of the court. Ex. 22; Ex. 24. The Debtor filed a Motion for Reconsideration on October 20, 2003, arguing that he had been unaware of the hearing date due to military obligations. Ex. 25. Thereafter, on October 25, 2003, the Ohio bankruptcy court entered an Order vacating its September 30, 2003 Order dismissing Case With 180–Day Bar to Refiling and dismissed the Debtor's case "without prejudice to refiling." Ex. 26.

On October 15, 2003, the Court of Common Pleas entered an Order Reactivating Action After Termination of Bankruptcy Stay, and pursuant thereto, the foreclosure sale was rescheduled for December 17, 2003, at 10:00 a.m. Ex. 27; Ex. 28. In fact, on December 17, 2003, the Sheriff for Miami County, Ohio, conducted a foreclosure sale of the Real Property. It was only after the sale was concluded that the Sheriff learned that the Debtor had filed the present pro se Voluntary Petition commencing his sixth Chapter 13 bankruptcy case at 9:58 a.m. on December 17, 2003 (Sixth Case). The Debtor did not file, nor has he to this date filed, a Chapter 13 plan or any statements and schedules, nor did he pay the required filing fee, instead fil-

ing an application to pay his filing fee in installments.

On January 5, 2004, Unizan Bank filed the Motion to Annul, and in support thereof, set forth the above history of its dealings with the Debtor. Unizan Bank avers that the Debtor has filed all of his bankruptcy cases, plus the Appeal, with the sole purpose of thwarting its efforts to foreclose upon its mortgage note and deed of trust. Unizan Bank urges the court to annul the automatic stay in order to retroactively allow confirmation of the Sheriff's December 17, 2003 foreclosure sale.

The present Sixth Case was dismissed by Order entered on January 9, 2004, for failure of the Debtor to pay the filing fees.[1] Thereafter, pursuant to the sale, on January 29, 2004, the Court of Common Pleas filed the Judgment Entry Confirming Sale and Ordering Deed and Distribution. Ex. 29. In response, on February 14, 2004, the Debtor filed a Motion to Set Aside the Judgment, making the following assertions:

> The defendant filed a Chapter 13 Bankruptcy on the same day of said sale of property but before the sale was conducted. A telephonic message was given to the deputy from the sheriffs [sic] office the morning of the filing of the bankruptcy. The bankruptcy stays the sale of the property therefore making the sale of the property null and void therefore the sale of said property is illegal! Furthermore, the defendant and his people would be prejudiced by the sale of the property as they were not inclined to bid on said property due to the pending bankruptcy!

Ex. 30.

Unizan Bank filed a Motion to Reopen Case on February 20, 2004, which was

---

1. The Motion to Annul was originally scheduled for hearing on January 8, 2004. The hearing was stricken when the Sixth Case was dismissed.

addressed by the court in its Order and Memorandum on Motion to Reopen Case, both filed on March 2, 2004, and in which the court vacated its January 9, 2004 dismissal Order and rescheduled the final evidentiary hearing on the Motion to Annul. The March 2, 2004 Order also served to reinstate the automatic stay.

## II

■ Unizan Bank's Motion is governed by 11 U.S.C.A. § 362(d) (West 1993 & Supp.2004), which provides, in material part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C.A. § 362(d)(1). The Sixth Circuit Court of Appeals, in *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir.1993), held that

> actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

*Easley*, 990 F.2d at 911. The court reasoned that § 362(d) "expressly permits the bankruptcy court to annul the stay[, which] 'permits the order to operate retroactively, thus validating actions taken by a party at a time when [it] was unaware of the stay [which] would otherwise be void.'" *Eas-*

*ley*, 990 F.2d at 910 (quoting 2 COLLIER ON BANKRUPTCY § 362.07 (footnotes omitted)). These actions are "voidable" rather than "void" because "void actions are incapable of later cure or validation." *Easley*, 990 F.2d at 910.

■■ "The stay may be annulled only in the presence of extraordinary circumstances, which include the debtor's bad faith filing of the bankruptcy case, a creditor's lack of 'knowledge of the applicability of the automatic stay,' and unfair prejudice to the creditor." *In re Burrell*, 186 B.R. 230, 235 (Bankr.E.D.Tenn.1995) (quoting *In re Lipuma*, 167 B.R. 522, 526 (Bankr. N.D.Ill.1994)). The equitable exceptions justifying annulment of the stay "must be applied sparingly." *In re Printup*, 264 B.R. 169, 176 (Bankr.E.D.Tenn.2001); *compare In re Washtenaw/Huron Inv. Corp. No. 8*, 160 B.R. 74, 79–80 (E.D.Mich. 1993) (bankruptcy court did not abuse its discretion in annulling the automatic stay after finding that the bankruptcy was filed in bad faith); *Printup*, 264 B.R. at 176 (annulment was justified because debtor purposely attempted to conceal her whereabouts from authorities); *In re Hurst*, 212 B.R. 890, 893 (Bankr.W.D.Tenn.1997) (annulment was justified when debtor violated consent order prohibiting re-filing prior to foreclosure) *with Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 135 (W.D.Mich. 1989) (bankruptcy court abused its discretion when it annulled the stay after finding that the debtor "didn't do anything wrong").

■ One of the primary purposes of bankruptcy is to provide the "honest but unfortunate debtor" with the opportunity to make a "fresh start." *In re Krohn*, 886 F.2d 123, 125 (6th Cir.1989) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Nevertheless, all bankruptcy petitions must be filed

in good faith and must be " 'fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.' " *In re Glenn,* 288 B.R. 516, 519–20 (Bankr.E.D.Tenn.2002) (quoting *Norwest Fin. Tenn. v. Coggins (In re Coggins),* 185 B.R. 762, 764 (Bankr.W.D.Tenn.1995)). A court, when making the determination of whether a debtor has filed in good faith based on the totality of the circumstances, should consider the following, non-exhaustive list of factors:

> (1) the motivation for filing for bankruptcy; (2) whether this is the first or subsequent filings; (3) the types of debts and how the debtor has dealt with his creditors; (4) whether the proposed payments are a mockery to other debtors; (5) the burden of administrating the plan; and (6) prospects for rehabilitation.

*Glenn,* 288 B.R. at 520 (citing *In re Sexton,* 230 B.R. 346, 351 (Bankr.E.D.Tenn. 1999)).

Of those factors listed above, the most determinative is the Debtor's motivation for filing his six Chapter 13 cases and the number of cases he has filed within just over four years. The Debtor filed three of his six cases on the eve of foreclosure sales. Of his six cases, in only the Second and Third Cases did the Debtor file more than skeleton petitions, and each of the six cases was dismissed, one with a 180–day refiling bar. The Debtor twice requested additional time from the Court of Common Pleas to respond to Unizan Bank's Motion for Summary Judgment in the foreclosure action, citing his "good faith efforts" to obtain information regarding his bankruptcy cases and his military service as the reasons therefor, but then, rather than proceeding in the Court of Common Pleas, the Debtor filed his Third and Fourth Cases.

On June 20, 2002, this court barred the Debtor from refiling a bankruptcy petition for 180 days. That bar allowed Unizan Bank the time to reinstate its foreclosure action and, in fact, obtain summary judgment against the Debtor and schedule a foreclosure.[2] However, since he was barred from filing for bankruptcy, the Debtor appealed the summary judgment on October 9, 2002, and then submitted a false Notice of Filing Bankruptcy on January 3, 2003, advising the Ohio Court of Appeals that he had filed for bankruptcy. Once the court was made aware that this information was false, it affirmed the summary judgment, and subsequently, a foreclosure sale was rescheduled; however, the Debtor once again, the day before the scheduled foreclosure, filed for bankruptcy, although this time, he filed in Ohio. Thirteen days after he filed, and stopped the foreclosure, the Debtor moved to dismiss his case.

For the final time, Unizan Bank reinstated its foreclosure action, and the foreclosure sale was rescheduled for December 17, 2003, at 10:00 a.m. The Sixth Case was filed at 9:58 a.m. on December 17, 2003; however, because Unizan Bank was unaware of the Sixth Case, the foreclosure occurred, and the Real Property was sold. The Sixth Case was dismissed on January 9, 2004, after the Debtor failed to pay his filing fees.[3] The Debtor has requested that the Court of Common Pleas set aside

---

2. In the Order dismissing the Fourth Case, the court fixed the 180–day refiling bar date pursuant to 11 U.S.C.A. § 109(g)(1) (West 1993) after finding that the Debtor "had ample opportunity to present a confirmable plan" and that his failure to do so was "a result of the Debtor's willful conduct."

3. As discussed at page 8 of this Memorandum, the Order dismissing the Sixth Case was vacated on March 2, 2004, to allow the court to consider Unizan Bank's Motion to Annul.

the foreclosure sale, stating that it was "illegal" because of his bankruptcy filing.

■■■ The court acknowledges that "[m]ultiple filings by a debtor are not, in and of themselves, improper." *Glenn,* 288 B.R. at 520 (citing *In re Pike,* 258 B.R. 876, 881 (Bankr.S.D.Ohio 2001)). Nevertheless, when, as here, the Debtor has "a history of multiple filings and dismissals," the court may construe bad faith. *Glenn,* 288 B.R. at 520; *see also In re McCoy,* 237 B.R. 419, 422 (Bankr.S.D.Ohio 1999). Similarly, bad faith is not necessarily construed simply because a debtor files for bankruptcy on the eve of foreclosure; however, such conduct may be "probative" of bad faith, especially when it has happened repeatedly with the same creditor. *Glenn,* 288 B.R. at 520 (citing *In re Faloti-co,* 231 B.R. 35, 40–41 (Bankr.D.N.J.1999)).

■■■ The facts of this case, as outlined above, exemplify the type of extraordinary circumstances justifying relief and annulment of the automatic stay in order to validate the Sheriff's sale which occurred in Miami County, Ohio, on December 17, 2003. The court agrees that the Debtor has repeatedly filed his bankruptcy cases in bad faith, in clear attempts to prejudice the rights of Unizan Bank, and has used the automatic stay as a "shield to avoid an unfavorable result." *Easley,* 990 F.2d at 911. The Debtor's serial filings present the court with a flagrant abuse of the bankruptcy system. The six bankruptcy cases filed by this Debtor have had but one goal: to preclude Unizan Bank and its predecessors from legitimately foreclosing on the Real Property. The Debtor has utilized the bankruptcy process to that end for almost five years.

Unizan Bank has been unduly burdened and prejudiced by the Debtor's actions and bad faith filings, and the court believes that the time for Unizan Bank to achieve justice is past due. The automatic stay shall be annulled as to Unizan Bank, thus validating the December 17, 2003 Sheriff's sale in Miami County, Ohio.[4]

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons stated in the Memorandum on Motion of Unizan Bank, National Association for Annulment of Automatic Stay filed this date, the court directs the following:

1. The Motion of Creditor Unizan Bank, National Association for Annulment of Automatic Stay of Section 362 filed by Unizan Bank, National Association on January 5, 2004, is GRANTED.

2. The automatic stay of 11 U.S.C.A. § 362(a) (West 1993 & Supp.2003) is, pursuant to 11 U.S.C.A. § 362(d) (West 1993 & Supp.2003), annulled as to Unizan Bank, National Association.

3. All actions taken by Unizan Bank, National Association on and after December 17, 2003, the date the Debtor commenced the present bankruptcy case, in the process of foreclosing its lien on the Debtor's interest in real property located at and commonly known as 2804 State Route 48, Ludlow Falls, Miami County, Ohio, are unaffected by the automatic stay.

SO ORDERED.

### AMENDED ORDER

For the reasons stated in the Memorandum on Motion of Unizan Bank, National Association for Annulment of Automatic

---

4. As the Debtor's present bankruptcy case remains pending, the court will by appropriate order require the Debtor to appear and show cause why the case should not be dismissed with a lengthy bar to refiling another bankruptcy case under title 11.

Stay filed on March 29, 2004, the court directs the following:

1. The Motion of Creditor Unizan Bank, National Association for Annulment of Automatic Stay of Section 362 filed by Unizan Bank, National Association on January 5, 2004, is GRANTED.

2. The automatic stay of 11 U.S.C.A. § 362(a) (West 1993 & Supp.2003) is, pursuant to 11 U.S.C.A. § 362(d) (West 1993 & Supp.2003), annulled as to Unizan Bank, National Association.

3. All actions taken by Unizan Bank, National Association on and after December 17, 2003, the date the Debtor commenced the present bankruptcy case, in the process of foreclosing its lien on the Debtor's interest in real property located at and commonly known as 2804 State Route 48, Ludlow Falls, Miami County, Ohio, are unaffected by the automatic stay.

4. The 10–day stay imposed upon an order granting a motion for relief from the automatic stay pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is inapplicable to the relief granted Unizan Bank, National Association herein.

5. This Amended Order replaces and supersedes the court's earlier Order of March 29, 2004.

SO ORDERED.