IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 8, 2013


BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS
SERVICING, LP V. KAISER C. TAYLOR AND ALL KNOWN AND UNKNOWN
HEIRS OF KAISER C. TAYLOR AND KATHY K. TAYLOR


Appeal from the Chancery Court for Hamilton County
No. 10-0905     W. Frank Brown, III, Chancellor

_____

No. E2012-01985-COA-R3-CV-FILED-JUNE 20, 2013

_____


This case involves a foreclosure sale that occurred while an automatic stay was in effect
pursuant to the mortgagor's bankruptcy proceeding. The mortgagee petitioned the trial court
to find the foreclosure void *ab initio* and to reform the real estate records by voiding the
successor trustee's deed and placing the parties in their original positions as to the deed of
trust. The trial court denied the relief requested by the mortgagee. The mortgagee appeals.
We hold that the foreclosure sale is invalid and of no effect because it is voidable, pursuant
to United States Code § 362(a)(6) and (c) (Supp. 2012) and Tennessee law, and because there
existed no equitable circumstances sufficient to constitute an exception to the operation of
the stay. We reverse the denial of summary judgment and remand to the trial court for
further proceedings.


Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded


THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D.
SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Peter L. Lublin and J. Kelsey Grodzicki, Peachtree Corners, Georgia, for the appellant, BAC
Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP.

Tabitha Finch, Chattanooga, Tennessee, for the appellees, Kaiser C. Taylor and All Known
and Unknown Heirs of Kaiser C. Taylor and Kathy K. Taylor.

**OPINION**

**I. Factual and Procedural Background**

The essential facts of this case are undisputed. On June 26, 1996, Kathy K. Hunter (Taylor) and Kaiser C. Taylor purchased real property improved with a home located at 6642 Sandwood Circle, in Harrison, Hamilton County, Tennessee ("Property"). They were not married yet and purchased the Property as tenants in common. Although they married soon after, they remained tenants in common as to the Property. The Taylors refinanced their mortgage in March 2003, obtaining a loan in the original principal amount of $92,000.00 from Mortgage Investors Group. To secure the loan, Kathy and Kaiser Taylor executed a deed of trust, conveying title to the Property to Charles E. Tonkin, II as trustee for Mortgage Electronic Registration Systems, Inc. as nominee for Mortgage Investors Group ("Deed of Trust"). The Deed of Trust was recorded on March 10, 2003.

Kaiser Taylor died on July 14, 2006, and was survived by his wife and one son from a prior relationship, Chappell Taylor, who was eighteen at the time of his father's death. Kaiser Taylor's estate was admitted to probate by the Hamilton County Chancery Court Probate Division on December 18, 2006. The probate court appointed Attorney Tabitha Finch as the Administratrix of the estate ("Administratrix").

After her husband's death, Ms. Taylor defaulted in payment on the promissory note, and pursuant to the terms of the Deed of Trust, the secured creditor began foreclosure proceedings. The relationship between Mortgage Investors Group and the Appellant, Countrywide Home Loans Servicing, LP, now doing business as BAC Home Loans Servicing, LP ("BAC"), is not clear from the record; however, it is undisputed that BAC was the secured creditor at the time of default. After publication for the foreclosure proceedings had begun, Ms. Taylor filed a petition for Chapter 7 bankruptcy, case number 1:08-bk-11768, in the United States Bankruptcy Court for the Eastern District of Tennessee, Chattanooga Division, on April 14, 2008.

BAC conducted a foreclosure sale at the Hamilton County Courthouse on April 24, 2008. According to the Successor Trustee's Deed, Countrywide Home Loans, Inc. (now BAC) was the highest bidder for the Property at $96,620.55. Per Countrywide's (BAC's) instruction, the Property was conveyed to the Federal National Mortgage Association ("Fannie Mae") via the Successor Trustee's deed, which was recorded on May 5, 2008 ("Successor Trustee's Deed"). Title to the Property was later conveyed via quit claim deed from Fannie Mae to BAC on September 21, 2011.

On June 4, 2008, the Trustee in Bankruptcy reported to the bankruptcy court that there would be no distributions in the bankruptcy case and abandoned all of Ms. Taylor's property. Pursuant to 11 United States Code Annotated § 362 (c), BAC filed a motion in the bankruptcy court to lift the stay barring recovery of a claim, said stay having been imposed automatically with the filing of the bankruptcy petition. *See* 11 U.S.C.A § 362(a)(6). The bankruptcy court granted the motion and lifted the stay on July 1, 2008. Ms. Taylor received a discharge in her bankruptcy case on July 16, 2008. She also vacated the Property.

BAC filed a petition for reformation and declaratory judgment against Ms. Taylor, Kaiser Taylor, and all known and unknown heirs of Kaiser Taylor in the Hamilton County Chancery Court on October 25, 2010. In its petition, BAC asked the trial court to void the Successor Trustee's Deed and reform the real estate records so that the parties would be returned to the positions they held before the foreclosure sale, with Ms. Taylor owning the Property subject to an open promissory note and deed of trust held by BAC.

In response to a motion filed by BAC, the trial court entered an order on June 22, 2011, in which it added Chappell J. Taylor and the Administratrix of Kaiser Taylor's estate as parties to the action. In his answer to the petition, Chappell Taylor asserted affirmative defenses of no contractual relationship with BAC, failure of consideration, and his status as a minor at the time the contract was formed. With reference to a separate motion filed by BAC, the trial court entered an Order granting default judgment against the unknown heirs of Kaiser C. Taylor on September 8, 2011, as no unknown heirs had come forward to answer BAC's petition.

On May 3, 2012, BAC filed the motion for summary judgment that is at issue here, contending that the foreclosure sale was void as a matter of law due to the automatic stay triggered by Ms. Taylor's bankruptcy proceeding. BAC sought to rescind the foreclosure and restore the parties to their positions before the foreclosure sale. The Administratrix filed a response to the motion for summary judgment, in which she argued that BAC knew that the Property was under bankruptcy protection when it foreclosed on the Property. She alleged that BAC was served on April 17, 2008, with a notice of a meeting of creditors, which she said BAC attended on May 17, 2008. She argued that the sale was invalid, not void, and that a remedy could only be granted in federal bankruptcy court.

Following a hearing, the trial court denied the motion for summary judgment as to BAC's claim that the foreclosure sale was void. The court acknowledge BAC's interest in seventy-five percent (75%) of the Property. In its Memorandum Opinion and Order, entered on July 24, 2012, the trial court made extensive findings of fact and the following conclusions of law:

1. Kaiser C. Taylor and Kathy K. Hunter, prior to their marriage, bought the Property on June 26, 1996 as tenants in common and the "right of survivorship" is not part of the deed to them.

2. An estate by the entireties can only be created for married persons. Tennessee Code Annotated § 66-1-109 and 14 Tenn. Jur., Husband and Wife, §§ 11-17 (2009).

3. Because there was no subsequent transfer between Kaiser C.Taylor and Kathy K. Taylor after their marriage, they continued to hold the property as tenants in common even after their marriage.

4. Tennessee abolished survivorship in joint property, Tenn. Code Ann. § 66-1-107, and there are no words of survivorship in the deed to Kaiser C. Taylor and Kathy K. Taylor.

5. Prior to the death of Kaiser C. Taylor on July 14, 2006, Kathy K. Taylor owned 50% of the Property and Kaiser C. Taylor owned 50% of the Property.

6. Upon his death, Kaiser C. Taylor's one-half [½] interest did not go to his estate but passed outside his estate in equal shares directly to his heirs: Kathy K. Taylor, his widow, and Chappell Taylor, his son.

7. After the death of Kaiser C. Taylor, Kathy K. Taylor owned 75% of the Property and Chappell Taylor owned 25% of the Property.

8. BAC has no monetary claim against Kaiser C. Taylor because neither BAC nor its predecessor filed a Proof of Claim in his estate proceedings in accordance with Tennessee law. Further, neither BAC nor its predecessor had to file a claim against the Estate of Kaiser C. Taylor because the Estate did not own the real estate.

9. The Estate of Kaiser C. Taylor, in over five and one-half years (5-½) years, has filed nothing to bring the Property into the Estate for sale to pay the debts and expenses of the Estate. Tennessee Code Annotated § 30-2-402.

10. No claims have been filed against the Estate of Kaiser C. Taylor and the court file is very thin. There were no proceedings for Year's Support or anything else of a substantive nature.

11. Chappell Taylor and Kathy K. Taylor are the only heirs of Kaiser C. Taylor and BAC has no valid claim against any unknown heirs of Kaiser C. and/or Kathy K. Taylor, the Estate of Kaiser C. Taylor, nor Kathy K. Taylor due to death and bankruptcy.

12. All interest of Kathy K. Taylor in and to the Property, which was 75% after her husband's death, was divested from her as a result of (a) the foreclosure on April 24, 2008 and the Substitute Trustee's deed recorded on May 5, 2008 and/or (b) her surrender of all of her interest

-4-

in the Property during her Chapter 7 Bankruptcy case, her failure to reaffirm the debt secured by the Property, the Trustee's abandonment of all property of Kathy K. Taylor, the Bankruptcy Court's discharge of all of her debts, and her vacating the Property.

13. Neither Kathy K. Taylor, nor anyone on her behalf, took any action in Bankruptcy court, during pendency of those proceedings or since her discharge, to make an issue of Countrywide's apparent violation of the automatic stay.

14. This court, under the unique facts and equities of this case, deems the Substitute Trustee's Deed to be voidable, not void *per se*, and no one has filed anything in the Bankruptcy Court nor any other court to declare the Substitute Trustee's Deed illegal or void [*per*] *se*. See *Ditto v. Delaware Savings Bank*, No. E2006-01439-COA-R3-CV, 2007 WL 471146 at *6-7 (Tenn. Ct. App. Feb. 14, 2007).

15. This court CAN NOT restore the debt to the name Kathy K. Taylor because that debt has been discharged in bankruptcy and the court's view that, if BAC obtained the relief it seeks, BAC's subsequent foreclosing on a discharged debt would be a violation of the Bankruptcy Code.

16. Kathy K. Taylor has stated to this court that she claims no interest in the Property and this court declares based upon the evidence in this case and the Bankruptcy case, that Kathy K. Taylor has no legal or equitable interest in and to the Property.

17. Countrywide Home Loans Servicing, L.P. was entitled to 75% ownership of the Property upon the registration of the Substitute Trustee's deed and/or the discharge of Ms. Taylor's debts and the closing of her Bankruptcy case as set forth above.

18. Neither the Trustee in Bankruptcy Court nor the Bankruptcy Court has any interest in reopening Kathy K. Taylor's bankruptcy case, due to the apparent violation of the stay provided by Bankruptcy Act, because she had no equity in the Property that could have been made available to her creditors and her case was a no asset case.

19. Chappell Taylor, who was not listed in the Substitute Trustee's Advertisement, Notice or Deed, has a claim of a 25% ownership interest in the Property.

20. This court has subject matter jurisdiction over equitable claims and declaratory judgments, personal jurisdiction over the parties, and venue is proper because the Property is located in Hamilton County and the Respondents live in Hamilton County, Tennessee.

-5-

The court also relies upon the following Equity Maxims. Equity looks to the intent rather than to the form [§ 2.10], Equity regards that as done which ought to be done [§ 2.12], Equity regards the beneficiary as the real owner [§ 2.24], and Equity enforces what good reason and conscience require [§ 2.25]. The foregoing Equity maxims are found in Chapter 2 in the specific section numbers cited in Gibson's Suits in Chancery (8th ed. 2004).

<u>The Conclusion</u>

In reviewing the Public Records, the court noted the Quit Claim Deed dated September 21, 2011 from Federal National Mortgage Association to [Countrywide] Home Loans, Inc. This deed was recorded on October 24, 2011 in book 9500, page 407 ROHC. Federal National Mortgage Association was the grantee of the Substitute Trustee's Deed in May of 2008. Thus, one could wonder if BAC had standing to file the lawsuit it did on October 25, 2010 or if the subsequent deed would cure such a problem.

Kaiser C. Taylor had been dead for almost two years before the foreclosure. His heirs were a matter of public record in his probate case for at least 15 months before the foreclosure. There is nothing in this record that shows that Countrywide or the Substitute Trustee tried to notify Chappell J. Taylor of the default or foreclosure. Chappell J. Taylor was not a party to the note or deed of trust. He was a minor at the time those documents were signed by his father and stepmother in 2003.

At the latest BAC or its predecessor would have had the right to Kathy K. Taylor's interest in the Property at the end of her Bankruptcy. The court is not certain why the parties have not been able to resolve these issues. The court cannot grant BAC the reformation relief it seeks. The court has declared the rights of BAC, and Chappell J. Taylor, in and to the Property. Therefore, there is really nothing else the court can do in this case based upon the pleadings. The court is certain that BAC and Chappell J. Taylor can resolve any remaining issues that are beyond the bounds of this lawsuit.

In its Order, the trial court decreed the following:

1.     The Motion for Summary Judgment filed by BAC is granted in part and denied in part[1] based upon the findings of fact and conclusions of law set forth above;

---

[1]The trial court denied in full the relief requested by BAC in the motion for summary judgment. The court's ruling, however, acknowledged BAC's interest in the Property, which appears to be the reason the court stated that the motion was granted in part.

2. Chappell J. Taylor owns a 25% interest in the 6642 Sandwood Circle Property as a result of his father's (Kaiser C. Taylor's) death without a will;

3. Kathy K. Taylor has no legal or equitable interest in the improved real estate known as 6642 Sandwood Circle, Harrison, Hamilton County, Tennessee for the reasons set forth above and below;

4. BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. is declared the owner of seventy-five percent (75%) of the improved real estate known as 6642 Sandwood Circle, Harrison, Hamilton County, Tennessee, either as a result of (a) the Substitute Trustee's deed recorded in Book 8657, page 352 ROHC on May 5, 2008 as to Kathy K. Taylor, and/or (b) Kathy K. Taylor's actions in her bankruptcy case, No. 1:08-bk-11768 in (i) abandoning the real estate, (ii) failing to reaffirm the debt, (iii) the Trustee's abandonment of all assets of Kathy K. Taylor, and (iv) Ms. Taylor's discharge in Bankruptcy;

5. BAC cannot receive part of the relief it seeks, restoration of the title and debt in the names of Kaiser C. Taylor and Kathy K. Taylor, because of her bankruptcy;

6. BAC's Petition for Reformation and Declaratory Judgment is dismissed as to Kaiser C. Taylor, Tabitha Finch as Administratrix of the Estate of Kaiser C. Taylor, all unknown heirs of Kaiser C. Taylor and Kathy K. Taylor, and Kathy K. Taylor as such Respondents have no interest in or to the 6642 Sandwood Circle Property;

7. The court hereby dismisses the action against Chappell J. Taylor because the court has granted the declaration of BAC's interest in the Property and denied the reformation relief sought by BAC as against the Bankruptcy Laws and probably unclean hands and/or the maxims that Equity aids the vigilant [§ 2.16], no one can take advantage of his own wrong [§ 2.18], and where one of two persons must suffer loss, he should suffer loss whose act or negligence occasioned the loss [§ 2.19]. Gibson's Suits in [Chancery] (8th ed. 2004)[)]; and

8. This is a Final Order as all issues presented have been resolved and the Clerk's costs, if any, are adjudged against BAC, for which execution may enter.

On July 24, 2012, BAC filed a "Motion to Reconsider," in which it presented additional argument supporting why the foreclosure sale should be found void *ab initio*. BAC requested, however, that if the foreclosure sale was held to be valid, it should be valid as to the interests of all respondents, including Chappell Taylor.

Following a hearing, the trial court issued a second Memorandum Opinion and Order on August 21, 2012, in which it denied BAC's motion. The court noted that the Tennessee Rules of Civil Procedure do not allow for a motion to reconsider and stated it nonetheless considered BAC's pleading as a motion to alter or amend pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. *See McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 n.3 (Tenn. Ct. App. 1997) (noting that the "Tennessee Rules of Civil Procedure do not authorize 'motions to reconsider'" and construing a motion to reconsider as a motion to alter or amend).

In denying the motion, the trial court stated in pertinent part:

> BAC's legal argument in support of its contention that this court's decision rested on an erroneous interpretation of the law is less than persuasive. The only new case law BAC cites to support its argument is an unpublished Tennessee Court of Appeals opinion interpreting the effect of an automatic stay in bankruptcy on foreclosure proceedings. *See* BAC Brief in Support of Motion to Reconsider at 7 (citing *Diggs v. LaSalle National Bank Ass'n*, 2012 WL 1939799, at *1 n. 2 (Tenn. Ct. App. May 30, 2012)).
>
> Interestingly, in its earlier Brief in Support of the Motion for Summary Judgment, BAC quoted the Sixth Circuit Court of Appeals in *Easley v. Pettibone Mich. Corp.*, stating "'actions taken in violation of the stay are invalid and *voidable* and shall be voided absent limited equitable circumstances.'" 990 F.2d 905 (6th Cir. 1993) (emphasis added). This court's ruling as to the voidable nature of the substitute trustee's deed was based precisely on such "equitable circumstances" deemed proper in the Sixth Circuit's decision *Easley*: "This court, under the unique facts and equities of this case, deems the Substitute Trustee's Deed to be voidable, not void *per se*. . ." July 12, 2012 Order at 10, ¶14; *see also* July 12, 2012 Order at 11 ¶20, 13 ¶7 ("The court . . . denied the reformation relief sought by BAC as against the Bankruptcy Laws and probably unclean hands and/or the maxims that Equity aids the vigilant, no one can take advantage of his own wrong, and where one of two persons must suffer loss, he should suffer loss whose act or negligence occasioned the loss." (internal citations omitted). Accordingly, this court finds that the July 12, 2012 Order rested on sound legal grounds and equitable principles. Therefore, BAC is not entitled to relief on this argument.
>
> Further, regardless of the merit of their argument above, the more basic principle BAC fails to address in its Brief is that "this court CAN NOT restore the debt to the name Kathy K. Taylor because that debt has been discharged

in bankruptcy and it is the court's view that, if BAC obtained the relief it seeks, BAC's subsequent foreclosing on a discharged debt would be a violation of the Bankruptcy Code." July 12, 2012 Order at 10, ¶15. Rather than addressing the legal ramifications of Chancery Court interfering with a bankruptcy case, BAC attempts to persuade the court that reinstating the Property and the Deed of Trust will somehow benefit Ms. Taylor. Primarily, BAC claims it does not seek to "restore the debt" to Ms. Taylor. Rather, it seeks to "put the Property back in the name of Ms. Taylor and the heirs of Kaiser C. Taylor, subject to the Deed of Trust." As a practical matter, contrary to BAC's claims in its Brief, restoring title subject to the deed of trust has the same effect as restoring the debt. Likewise, if there is no "debt" in default in Ms. Taylor's name, then on what basis would BAC foreclose on the Property?

Further, the publication of a foreclosure proceeding would have to be embarrassing to Ms. Taylor. Some credit reporting agency may discover the 2012 foreclosure, or she, as an honest person, may self-declare such in a credit application. Accordingly, regardless of whether the foreclosure sale was "void" or "voidable," this court cannot grant BAC the relief it seeks without violating the Bankruptcy Code. *See* 11 U.S.C.A. § 727 (". . . a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . ."); *Prod. Credit Ass'n of Fourth Dist. v. Ward*, 1990 WL 39350, at *1 (Tenn. Ct. App. Apr. 9, 1990) (finding that the Chancery Court did not have the power to determine whether a promissory note was properly discharged in bankruptcy: "This Court cannot and should not attempt to place a construction on the final judgment of the [bankruptcy court], other than what is apparent from the face of [the] instrument, by undertaking to construe the various pleadings that led to [their] conclusion . . . All other questions pertaining to that proceeding or the manner in which that proceeding was concluded should properly be addressed to that court."); *see also In re LaPorta*, 26 B.R. 687, 692 (Bankr. N.D. Ill. 1982) ("Requests to modify or vacate a debtor's discharge lies within the sound discretion of the bankruptcy court."). If BAC disagrees with this court's ruling that the foreclosure was voidable, that there are equitable grounds to not void the Substitute Trustee's deed, and Ms. Taylor's failure to challenge the foreclosure deed, then it is free to petition the Bankruptcy Court to reopen her case and do what is right under the law and by Ms. Taylor.

(Section Roman numeral omitted; footnote added.)

BAC timely appealed.

## II. Issues Presented

On appeal, BAC presents four issues, which we have restated as follows:

1.  Whether the trial court erred by finding that the foreclosure sale of the Property, conducted in violation of an automatic stay imposed by 11 U.S.C. § 362(a)(6) and (c), was only voidable and not void *ab initio* and therefore erred by finding the foreclosure sale to be valid.

2.  Whether the trial court erred by finding that it could not rescind the foreclosure sale because any subsequent re-foreclosure would be a violation of the Bankruptcy Code.

3.  In the event that the trial court did not err in finding the foreclosure sale valid, whether the trial court erred by finding that Chappell Taylor's interest in the Property was not extinguished by the foreclosure of the deed of trust.

4.  Whether the trial court erred by finding that Chappell Taylor was entitled to notice of the foreclosure sale and therefore finding that the foreclosure sale was invalid as to Chappell Taylor's interest.

## III. Standard of Review

Our Supreme Court has succinctly described the applicable[2] standard of review of a trial court's grant of summary judgment:

> A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84

---

[2]The recently enacted Tennessee Code Annotated § 20-16-101 (Supp. 2012), 2011 Tenn. Pub. Acts 498, is applicable only to cases commenced on or after July 1, 2011, and therefore is not applicable to this case. Tennessee Code Annotated § 20-16-101 provides a standard of review for summary judgment with the stated purpose "to overrule the summary judgment standard for parties who do not bear the burden of proof at trial set forth in *Hannan v. Alltel Publishing Co.*, its progeny, and the cases relied on in *Hannan*." *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).

(Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). In the case at bar, the relevant facts are undisputed, and therefore whether the trial court erred in denying summary judgment hinges on whether BAC demonstrated that it was entitled to a conclusion of law that the foreclosure sale was invalid due to the automatic stay initiated by the bankruptcy proceeding.

## IV. Effect of Violation of Stay

The parties agree that the foreclosure sale, held on April 28, 2008, violated the automatic stay triggered by the filing of Ms. Taylor's bankruptcy petition on April 14, 2008. The trial court found that under the Sixth Circuit's decision in *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir. 1993), the foreclosure was voidable rather than void and that only the bankruptcy court had the authority to void the sale. BAC contends that because the foreclosure sale was conducted in violation of the automatic stay, it was void *ab initio* and did not require an action by the bankruptcy court to void it. We conclude that the foreclosure sale was voidable, but we also conclude that because no annulment of the stay was requested from or granted by the bankruptcy court and because none of the limited equitable circumstances constituting exceptions to the operation of the stay were present, the foreclosure sale was invalid.

Under United States Code Annotated § 362(a)(6), a petition filed in federal court for bankruptcy "operates as a stay, applicable to all entities, of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." The automatic stay provision provides "fundamental protection to the debtor" by "'stop[ping] all collection efforts, all harassment, and all foreclosure actions.'" *Easley*, 990 F.2d at 910.

Whether a creditor's act committed in violation of the stay is void or voidable is a matter on which the federal circuits have been split. *See Easley*, 990 F.2d at 909-10; *Ditto v. Del. Sav. Bank*, No. E2006-01439-COA-R3-CV, 2007 WL 471146 at *6 (Tenn. Ct. App. Feb. 14, 2007). The majority view is that actions in violation of the stay are void *ab initio*.

-11-

*See Easley*, 990 F.2d at 909 (internal citations omitted); *Ditto*, 2007 WL 471146 at *6 (internal citations omitted). The Sixth Circuit, however, in *Easley* held that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." 990 F.2d at 911. This Court expressly adopted the *Easley* approach in *Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc.*, 895 S.W.2d 335, 341 (Tenn. Ct. App. 1994) ("We believe the better reasoned approach is that stated by the Sixth Circuit; therefore, we hold that an action filed in violation of the automatic bankruptcy stay is voidable and not void.").

The Sixth Circuit's analysis of this issue in *Easley* began with the following definition of "void" as contrasted with "voidable":

> "Void" is defined as "an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it," Black's Law Dictionary 1573 (6th ed. 1990); and as that "of no legal force or effect and so incapable of confirmation or ratification." Webster's Third New International Dictionary 2562 (1971). "Voidable" is defined as "not void in itself," Black's Law Dictionary 1574 (6th ed. 1990), and as "capable of being adjudged void, invalid, and of no force," Webster's Third New International Dictionary 2562 (1971). We think that "invalid" is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word "void," "invalid" describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified.

990 F.2d at 909.

The *Easley* court further reasoned that a violation of the stay is voidable because of the bankruptcy court's statutory authority to retroactively annul the stay:

> Bankruptcy courts have the jurisdiction to modify the automatic stay so as to allow actions against the debtor. 11 U.S.C. § 362(d).[FN3] This section expressly permits the bankruptcy court to annul the stay. This power to annul "permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." 2 *Collier on Bankruptcy* § 362.07 (footnotes omitted). If we are to give effect to the statutory authority to annul a stay, such actions can only be described as invalid and voidable, since void actions are incapable of later cure or validation.

-12-

FN3. Section 362(d) provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d) (West Supp. 1992).

*Id.* at 909-10 (quoted section of statute unchanged as of 2012 Supp.)

The trial court found, *inter alia*, that it did not have authority to void the foreclosure sale. We disagree. The trial court and this Court have jurisdiction to determine whether the stay applied at the time of the sale and whether any circumstances existed to lift the stay. *See Ditto*, 2007 WL 471146 at *7 ("While the bankruptcy court has exclusive authority to allow a party relief from the stay, a nonbankruptcy court has jurisdiction to determine whether the stay applies at all.") (citing *In re Glass*, 240 B.R. 782, 787 (Bankr. M.D. Fla. 1999)). If no order was in place to annul the stay and no equitable circumstances existed sufficient to suspend operation of the stay, it was in force, and the action taken in violation must be voided. *See* 11 U.S.C.A. § 362(a) & (c); *Easley*, 990 F.2d at 911-12; *Ditto*, 2007 WL 471146 at *7-8.

In the case at bar, Ms. Taylor received a discharge in her bankruptcy case on July 16, 2008. Prior to that discharge, BAC moved for modification of the automatic stay, which the bankruptcy court granted in its order entered July 1, 2008. The bankruptcy court ruled in pertinent part:

It is therefore ordered, adjudged and decreed that: the automatic stay imposed under 11 U.S.C. § 362 hereby is modified in favor of Creditor [BAC] with respect to the hereinafter described Collateral [Property] so that Creditor may exercise all state law remedies to foreclose its interest in the Collateral, including foreclosure of Creditor's liens in the Collateral by judicial or non-judicial means, sale of the Collateral pursuant to the Uniform Commercial Code or other applicable law, and application of the sale proceeds to Debtor's indebtedness to Creditor secured by the Collateral, including reasonable attorneys fees to the extent allowable under non-bankruptcy law.

The modification had the effect of lifting the stay from that time forward, but the bankruptcy court did not issue an order retroactively annulling the stay. The stay was in place from the time that Ms. Taylor filed her petition in bankruptcy court on April 14, 2008,

through entry of the order to modify the stay on July 1, 2008. At the time of the foreclosure sale on April 24, 2008, the stay was in full force. Because no action was taken to annul the stay while the bankruptcy case was active, the stay was not retroactively removed.

This brings us to whether any of the limited equitable exceptions to the stay apply in this case. In holding that actions taken in violation of the automatic stay are voidable, the *Easley* court also held that such actions "shall be voided absent limited equitable circumstances," which the court summarized as:

> We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

990 F.2d at 911; *see, e.g., In re Dupuy*, 308 B.R. 843, 850 (Bankr. E.D. Tenn. 2004) (granting motion to annul stay on equitable grounds because debtor had "repeatedly filed his bankruptcy cases in bad faith" and had "used the automatic stay as a 'shield to avoid an unfavorable result'" (citing *Easley*, 990 F.2d at 911)). The *Easley* court further clarified that "'any equitable exception to the stay must be applied sparingly'" and that "in the absence of 1) an attempt to exploit the stay to gain an unfair advantage or (2) the fraudulent, willful delay in asserting the stay as a defense, actions taken during the pendency of the stay are void." 990 F.2d at 911; *see also Ditto*, 2007 WL 471146 at *7.

In this case, there are no allegations that Ms. Taylor, as the debtor, unreasonably withheld notice of the foreclosure sale or that she attempted to use the stay unfairly as a shield. The limited equitable exceptions simply do not apply. The case is an unusual one because where the creditor would typically be the party to request that a foreclosure be upheld and the debtor the party to request that it be voided, these positions are inverted. Creditors and debtors both have standing to allege violations of the automatic stay. *See Ditto*, 2007 WL 471146 at *5-6 (holding that because "the automatic stay protects both debtors and creditors," the creditor in the case had standing to challenge a tax sale to the purchaser). The creditor in this case, BAC, has admitted with this action that it violated the stay, and none of the limited equitable circumstances delineated by the Sixth Circuit and accepted by this Court have been shown to exist. *See Easley*, 990 F.2d at 911; *Southland Express*, 895 S.W.2d at 341; *Ditto*, 2007 WL 471146 at *7.

In reaching this conclusion, we have considered the equitable principles applied by the trial court in this case when it found the foreclosure sale valid. In its initial Memorandum Opinion and Order, the trial court stated:

The court also relies upon the following Equity Maxims. Equity looks to the intent rather than to the form [§ 2.10], Equity regards that as done which ought to be done [§ 2.12], Equity regards the beneficiary as the real owner [§ 2.24], and Equity enforces what good reason and conscience require [§ 2.25]. The foregoing Equity maxims are found in Chapter 2 in the specific section numbers cited in Gibson's Suits in Chancery (8th ed. 2004).

Regarding its rationale for denying to BAC the remedy of reformation, the trial court stated that such relief would be

against the Bankruptcy Laws and probably unclean hands and/or the maxims that Equity aids the vigilant [§ 2.16], no one can take advantage of his own wrong [§ 2.18], and where one of two persons must suffer loss, he should suffer loss whose act or negligence occasioned the loss [§ 2.19]. Gibson's Suits in [Chancery] (8th ed. 2004[)] . . . .

As compelling as these maxims are, we conclude that they do not expand the reach of the limited equitable exceptions to the automatic stay recognized as a matter of law.

Ms. Taylor argues in her brief on appeal that BAC's remedy would be to have the stay annulled through a new petition in bankruptcy court. She cites as her sole authority for this argument a Fifth Circuit case describing the bankruptcy court's power to annul. *See Sikes v. Global Marine, Inc.*, 881F.2d 176, 178-79 (5th Cir. 1989) (also explicitly holding in the minority that the automatic stay is voidable). We note that federal intermediate appellate decisions are but persuasive authority for Tennessee courts. *See Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 n.3 (Tenn. Ct. App. 2010) (internal citations omitted); *but see Southland Express*, 895 S.W.2d at 341 (expressly adopting the Sixth Circuit's approach in *Easley*). This point aside, there is no dispute in the case at bar over whether the bankruptcy court had the authority to annul the stay during the pendency of the bankruptcy case. No motion to annul was requested or granted, and the bankruptcy court's order to modify the stay took effect more than two months after the foreclosure sale.

Upon our conclusion that the foreclosure sale violated the automatic stay, we conclude that the sale was voidable, and because there was no retroactive annulment of the stay and there were no equitable circumstances present as an exception to the operation of the stay, the foreclosure sale was invalid and of no effect.

## V.  Effect of Voiding Foreclosure Sale

The trial court concluded that it did not have the authority to restore the deed of trust and underlying promissory note to its pre-foreclosure status because of the discharge of Ms. Taylor's debts in bankruptcy, reasoning that to reinstate the lien in Ms. Taylor's name would violate bankruptcy law.  Ms. Taylor does not address this issue separately in her brief, although she maintains in her argument summary that BAC's relief, if any, should be granted in bankruptcy court.  BAC contends that the court's finding was in error because the effect of a discharge in bankruptcy is not to erase the debt but to prevent the creditor from pursuing liability under the debt against the debtor.  We agree.

In its Order and Memorandum Opinion denying BAC's post-judgment motion, the trial court stated in relevant part:

> Accordingly, regardless of whether the foreclosure sale was "void" or "voidable," this court cannot grant BAC the relief it seeks without violating the Bankruptcy Code.  *See* 11 U.S.C.A. § 727 (". . . a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . ."); *Prod. Credit Ass'n of Fourth Dist. v. Ward*, 1990 WL 39350, at *1 (Tenn. Ct. App. Apr. 9, 1990) (finding that the Chancery Court did not have the power to determine whether a promissory note was properly discharged in bankruptcy: "This Court cannot and should not attempt to place a construction on the final judgment of the [bankruptcy court], other than what is apparent from the face of [the] instrument, by undertaking to construe the various pleadings that led to [their] conclusion . . . All other questions pertaining to that proceeding or the manner in which that proceeding was concluded should properly be addressed to that court."); *see also In re LaPorta*, 26 B.R. 687, 692 (Bankr. N.D. Ill. 1982) ("Requests to modify or vacate a debtor's discharge lies within the sound discretion of the bankruptcy court.").  If BAC disagrees with this court's ruling that the foreclosure was voidable, that there are equitable grounds to not void the Substitute Trustee's deed, and Ms. Taylor's failure to challenge the foreclosure deed, then it is free to petition the Bankruptcy Court to reopen her case and do what is right under the law and by Ms. Taylor.

BAC concedes that pursuant to the bankruptcy code, it cannot pursue Ms. Taylor for her personal liability on the promissory note even with Ms. Taylor's status as the holder of the deed reinstated.  The trial court properly cited 11 United States Code Annotated § 727(b) (Supp. 2012) for the rule that a discharge in bankruptcy discharges the debtor from debts and liability arising before filing of the bankruptcy petition, barring limited exceptions that do

not apply in this case. Specific to the effect of a discharge, 11 United States Code Annotated § 524(a) (Supp. 2012) provides in pertinent part:

> (a) A discharge in a case under this title–
>
> > (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
> >
> > (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;
> >
> > . . .

There is no question that the statutory effect of a discharge in bankruptcy is to release the debtor from personal liability for a debt that arose before the bankruptcy action commenced, such as Ms. Taylor's debt in this case. It is important, however, to distinguish between Ms. Taylor's personal liability with respect to any debt and the existence of the lien on real property. The United States Supreme Court has noted that "a lien on real property pass[es] through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *see also Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim–namely, an action against the debtor *in personam*–while leaving intact another–namely, an action against the debtor *in rem*."); *In re Glance*, 487 F.3d 317, 321 (6th Cir. 2007) ("In the final analysis, just as a debtor may seek protection from a bank's foreclosure on a lien, because it is a 'claim' under the Code . . . so a debtor must treat the same lien as a 'debt' in determining whether he has exceeded the debt limitations for filing a Chapter 13 petition.") (citing *Johnson*, 501 U.S. at 85).

The trial court cited this Court's opinion in *Prod. Credit Ass'n of the Fourth Dist. v. Ward*, 1990 WL 39350 (Tenn. Ct. App. Apr. 9, 1990), for the conclusion that the state court did not have the authority to determine whether a promissory note was discharged in bankruptcy court. In *Prod. Credit Ass'n*, the record from the defendants' bankruptcy case showed that the case had been closed but not that the debts at issue had been discharged. 1990 WL 39350 at *4. This Court held that "absent such proof [of the discharge] in the record, it was error for the trial court to dismiss [the creditors'] suit upon the two notes." *Id.* ("This court, as the court below, is not empowered to modify or amend the pleadings filed in the bankruptcy court."). The holding in *Prod. Credit Ass'n* is not applicable to this case. The bankruptcy court's record clearly indicates that Ms. Taylor's debts were discharged, and

BAC has not argued otherwise. Our decision to void the foreclosure sale will not modify or amend the judgment or any pleadings in Ms. Taylor's bankruptcy case.

The trial court also cited a bankruptcy court decision from the Northern District of Illinois for the proposition that modification or vacation of a discharge is within the sound discretion of the bankruptcy court. *See In re LaPorta*, 26 B.R. 687, 692 (Bankr. N.D. Ill. 1982). *In re LaPorta* is also factually distinguishable from the case at bar. There, the bankruptcy court held that it was not necessary to revoke the debtor's discharge in order to allow the United States Secretary of Labor to proceed with an administrative hearing regarding the debtor's liability for alleged violations of a federal act. *Id.* at 693. The trial court appears to have equated voiding the foreclosure sale and reinstating the Deed of Trust with revoking Ms. Taylor's discharge in bankruptcy. No revocation of the discharge of Ms. Taylor's debts has been proposed by BAC, and reinstating the Deed of Trust will not result in such a revocation. We conclude that because the lien against the Property survived the discharge of Ms. Taylor's debts in her bankruptcy case, said discharge does not bar rescinding the Successor Trustee's Deed and restoring the Deed of Trust and underlying promissory note.

## VI. and VII.  Chappell Taylor's Interest

The remaining two issues raised by BAC concern Chappell Taylor's interest in the Property and whether the trial court erred in finding that he held a twenty-five percent 25% interest that was not extinguished by the foreclosure sale due to a lack of personal notice. Our review of the record reveals that the trial court correctly found that Chappell Taylor inherited half of his father's interest in the Property as a tenant in common with Ms. Taylor. Because we have concluded, however, that the foreclosure sale must be voided and the Deed of Trust restored, Chappell Taylor's interest in the Property still exists but is subject to the Deed of Trust, as it was when the foreclosure proceedings began. Further review of the remaining issues is pretermitted as moot. The trial court's dismissal of the action against Chappel J. Taylor is reversed.

## VIII.  Conclusion

For the reasons stated above, the dismissal of BAC's motion for summary judgment is vacated, summary judgment is granted in favor of BAC, the foreclosure sale of the Property is declared to be invalid and of no effect, the Successor Trustee's Deed is declared to be void and of no effect, and the Deed of Trust is restored. This case is remanded to the trial court, pursuant to applicable law, for further action as necessary and consistent with this opinion. Exercising our discretion and noting that BAC in its motion for summary judgment

voluntarily assumed court costs for summary judgment, we assess costs of this appeal equally between the parties.

_____
THOMAS R. FRIERSON, II, JUDGE